**GLOBAL CAPITAL LAW**
Gary Harre, Esq. (86398)
Diane Beall (86877)
8700 Warner Ave., Ste 200
Fountain Valley, CA 92708
Phone   (714) 907-4182
Fax     (714) 907-4175
Email: ghcmecf@gmail.Com

Attorneys for Debtors, THUAN X. NGUYEN AND TAMMY H. NGUYEN

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In Re:<br><br>THUAN X. NGUYEN AND TAMMY H. NGUYEN<br><br>    Debtors. | **Case No.  8:10-BK-21730-RK**<br><br>**CHAPTER 11**<br><br>**DEBTORS' OPPOSITION TO THE REDO MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>DATE: 03/08/2011<br>TIME:  10:30 AM<br>CTRM:  5D |

  Debtors Thuan X. Nguyen and Tammy H. Nguyen (hereinafter "DEBTORS" or "NGUYEN"), by and through their undersigned counsels, submits this Memorandum of Points and Authorities in opposition of the **Redo-Motion** for Relief from the Automatic Stay brought by DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF THE RESIDENTIAL ASSET SECURITIZATION TRUST 2006-A1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-A UNDER POOLING AND SERVICING AGREEMENT DATED FEBRUARY 1, 2006 ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST (hereinafter "DBNTC, AS TRUSTEE" or "MOVANT").

  DBNTC, as Trustee, through its known foreclosure mill counsel Barrett Daffin Frappier Treder & Weiss, LLP (hereinafter "BDFTW"), previously moved this Court to lift the automatic stay relating to the property known as 3394 Carmel Drive, Costa Mesa, CA 92626. *See* Pacer Docket 14.  This Court issued its tentative ruling as part of the hearing that was held on October 19, 2010.  A true and correct copy of the tentative ruling is attached herewith as **Exhibit A**. This Court denied Movant's motion for lack of

evidence or standing. The order denying motion for relief from the automatic stay was entered by this Court on November 4, 2011. *See* Pacer Docket 14.

Despite such adverse ruling, Movant, through its counsel, again brings essentially the same motion with virtually identical supporting evidence. The only additional evidence that Movant produced was alleged ALLONGES coming from two different entities. *See* Pacer Docket 45-1, page 21-22 of 29. Such ALLONGES were NOT "firmly attached" to previously produced copy of the promissory note.

Debtors contend that Movant has no legal standing and its motion must be denied. The addition of a purported ALLONGES, not included in the previously proffered as evidence in support of the motion for relief from automatic stay, undisputedly confirmed that the ALLONGES were not firmly attached to the original promissory note as filed under penalty of perjury.

> **The deception and fraud committed by Deutsche Bank National Trust Company and its known foreclosure mill counsels, Barrett Daffin Frappier Treder & Weiss, LLP, upon the Court and harassment upon Debtors with unwarranted motion to cause delay and to increase litigation costs by Debtors must be stopped.**

Debtor never consented to Mortgage Electronic Registrations Systems Inc. (hereinafter "MERS") acting as Nominee for Indymac Bank F.S.B. or holding beneficial interest in the subject Deed of Trust (hereinafter "DOT"). The purported conveyance of beneficial interest in the DOT without the NOTE by PHH Home Loans, LLC to MERS constitutes fraudulent conveyance and therefore VOID on its face. *See* Pacer Docket 45-1, page 25 of 29. Consequentially, neither Indymac Bank, F.S.B. nor MERS hold a valid beneficial interest under the DOT to convey to anyone, including Movant.

Assuming ***arguendo*** that Movant received a valid conveyance of beneficial interest under the DOT on December 7, 2009. *See* Pacer Docket 45-1, page 26 of 29. Such conveyance is VOID as matter of law pursuant to the Pooling and Servicing Agreement Dated February 1, 2006 between Movant and the Residential Asset Securitization Trust 2006-A1 (hereinafter "SUBJECT TRUST"). Movant, as trustee of the Subject Trust, undisputedly breached its fiduciary duty when it took on a mortgage loan in its name 3 years after the trust have been closed under the strict New York Trust Law that govern the Subject Trust.

WHEREFORE, Debtors respectfully request this Court to deny DBNTC's second Motion for Relief from the Automatic Stay and set an OSC re Sanction against DBNTC and its Counsel, BDFTW, in bringing this frivolous and unwarranted motion for the purpose of harassment, causing delay and increasing debtors' cost to oppose such frivolous motion.

## SUMMARY OF DEBTORS' MORTGAGE

Debtors executed a promissory note payable to PHH Home Loans, LLC dba First Capital (hereinafter "PHH"). The security interest is in the form of Deed of Trust and it named PHH Home Loans, LLC dba First Capital as the beneficiary of the Deed of Trust. MERS was not a party to this agreement as noted on the January 13, 2006 Deed of Trust (hereinafter "DOT"). The DOT was recorded on January 13, 2006 with the Orange County Recorder as Instrument number 2006000043242. *See* Pacer Doc 45-1, Page 2-17 of 29 [Movant's Exhibit 1].

Nothing in the record shows the current owner of the promissory note or its complete assigned chain of title. A number of documents were filed in the Orange County Recorder's Office relating to the Deed of Trust. No documents were filed relating to the promissory note, which Debtors have not seen since it was executed.

Of the various documents filed in the recorder's office, includes, the First Assignment of Deed of Trust in which PHH purportedly assigned to MERS as nominee for Indymac Bank, F.S.B. beneficial interest in the Deed of Trust. *See* Pacer Doc 45-1, page 25 of 29 [Movant's Exhibit 3]. Debtor never consented to MERS acting as nominee for anyone to hold beneficial interest.

Such conveyance of deed of trust raised serious issue of fraud because it stated as followed: "**ACCOMMODATION This document delivered to recorder as an accommodation only at the express request of the parties here to. It has not been examined as to its effect or validity."**

On July 11, 2008, IndyMac Bank, F.S.B., Pasadena, CA was closed by the Office of Thrift Supervision (OTS) and the FDIC was named Conservator. A true and correct copy of press releases by FDIC is available via the internet at http://www.fdic.gov/news/news/press/2008/pr08056.html and is attached herewith as **Exhibit B**. MERS, acting as an unauthorized Nominee for Indymac Bank FSB who no longer in existence, purportedly assigned beneficial interest it never had to DBNTC. *See* Pacer Doc 45-1, page 26 of 29 [Movant's Exhibit 3). Such assignment was executed by Chamagne Williams who claimed to be Assistant Vice President of MERS. However,

Debtors, through their counsel, determined that Williams is an employee of Onewest Bank, FSB. She has not had a pay check from MERS, stepped foot in a MERS office, but yet signs for a Third Party, MERS, who is not a party to the original DOT and fraudulent represented that it was a nominee for a company no longer exists.

//

## ARGUMENTS

### I. STANDING

Stay-relief requests are governed by Fed. R. Bankr. P. 4001(a)(1), to which Fed. R. Bankr. P. 9014 is applicable. Rule 9014, in turn, incorporates Rule 7017, which makes Fed. R. Bankr. P. 17 applicable ("[a]n action must be prosecuted in the name of the real party in interest.";) The standing doctrine "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Kowalski v. Tesmer, 543 U.S. 125, 128-29, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (quoting Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct 2197, 45 L.Ed.2d 343 (1975)).

Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision. (Valley Forge Christian Coll. v. Am. United for Separation of Church and State, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (citations and internal quotations omitted)). Beyond the Article III requirements of injury in fact, causation, and redressibility, the creditor must also have prudential standing, which is a judicially-created set of principles that places limits on the class of persons who may invoke the courts' powers. (Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct 2197, 45 L.Ed.2d 343 (1975)). As a prudential matter, a plaintiff must assert "his own legal interests as the real party in interest". (Dunmore v. United States, 358 F.3d 1107, 1112 (9th Cir.2004), as found in Fed.R.Civ.P. 17, which provides "[a]n action must be prosecuted in the name of real party in interest.")

### a. THE PROMISSORY NOTE EVIDENCES THE REAL PARTY IN INTEREST, AND THAT PARTY IS NOT DEUTSCHE BANK.

Transfer of mortgage paper may be made outright (sale) or by pledge (as security for a loan to the transferor.). In either event, to perfect the transfer, the transferor should physically deliver the note to the transferee. Without a physical transfer, a sale of the note could be invalided as a fraudulent conveyance (under California Civil Code section 3440), and a transfer in pledge could be invalidated as an unperfected (under

Comm. Code 9313-9314). (California Mortgages and Deed of Trust, and Foreclosure Litigation, by Roger Bernhardt, Fourth Edition, section 1.26). One without a pecuniary interest in the Mortgage Loan is not an obligee under the debt and, thus, has no legal standing to foreclose *ab initio*. (Watkins v. Bryant (1891) 91 C 492, 27 P 77).

The Note is not a bearer instrument, but is an instrument payable to a specifically identified person. California Comm. Code section 3109 states:

(a) A promise or order is payable to bearer if it is any of the following:

(l)    States that it is payable to bearer or to the order of bearer or otherwise indicates that the person in possession of the promise or order is entitled to payment.

(2)    Does not state a payee.

(3)    States that it is payable to or to the order of cash or otherwise indicates that it is not payable to an identified person.

(b)    A promise or order that is not payable to bearer is payable to order if it is payable (1) to the order of an identified person or (2) to an identified person or order. A promise or order that is payable to order is payable to the identified person.

(c)    An instrument payable to bearer may become payable to an identified person if it is specially indorsed pursuant to subdivision (a) of Section 3205. An instrument payable to an identified person may become payable to bearer if it is indorsed in blank pursuant to subdivision (b) of Section 3205.

A promissory note that is payable to a specifically identified person is not transferred merely by possession; instead, transfer requires that it be endorsed. California Com. Code 3201 states:

(a) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.

(b) Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.

An endorsement is not made by purchasing a note, or by purchasing a debt, or by an assignment, instead, an endorsement is made by the signature of the specifically identified person to whom the note is owed. California Com. Code section 3204 states:

(a) "Endorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (1) negotiating the instrument, (2) restricting payment of the instrument, or (3) incurring endorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an endorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than endorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.

(b) "Endorser" means a person who makes an endorsement.

(c) For the purpose of determining whether the transferee of an instrument is a holder, an endorsement that transfers a security interest in the instrument is effective as an unqualified endorsement of the instrument.

(d) If an instrument is payable to a holder under a name that is not the name of the holder, endorsement may be made by the holder in the name stated in the instrument or in the holder's name or both, but signature in both names may be required by a person paying or taking the instrument for value or collection.

If one bought a note and intends to enforce it, but the note does not carry the endorsement of the payee, that person can bring an action in court to specifically enforce the right to an endorsement. Then, once that is done, the creditor can enforce the note against its maker.  California Com. Code section 3203 states:

(a)  An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

(b)  Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

(c)  Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of endorsement by the transferor, the transferee has a specifically enforceable right to the unqualified endorsement of the transferor, but negotiation of the instrument does not occur until the endorsement is made.

(d) If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this division and has only the rights of a partial assignee.

The promissory note in this case was made payable to PHH Home Loans, LLC dba First Capital. The deed of trust states that PHH Home Loans, LLC dba First Capital is the beneficiary of it. The assignment of Deed of Trust by PHH purportedly conveyed beneficial interest to MERS as Nominee of Indymac without delivery of the promissory note to MERS is VOID on its face. Debtors never consented to anyone holding bare legal title on the behalf of real party with beneficial interest in the note. Yet, MERS held beneficial interest in the DOT as nominee of Indymac without having any interest in the promissory note.

Assuming *arguendo* that MERS could act as nominee for Indymac. However, such agency relationship would be terminated on or before July 11, 2008 because Indymac ceased to exist. MERS was not authorized to act as nominee for anyone receiving beneficial interest in Debtors' mortgage as assignee. Yet, on or about December 7, 2009, MERS fraudulently continued to act as nominee of Indymac, an entity no longer existed, assigning beneficial interest in DOT, that had been extinguished, to DBNTC.

### b. THE ALLONGE IS VOID AS IT WAS NOT FIRMLY ATTACHED AS REQUIRED BY THE LAW.

The California Uniform Commercial Code ("UCC") literally requires an allonge to be "**firmly affixed**" to the instrument. Undisputedly, the purported ALLONGES now produced was not attached to the promissory note. Movant, through its counsel, previously placed in evidence a copy of the original promissory note under the penalty of perjury that such NOTE was a true and correct copy. Undisputedly, such promissory note was not a true and correct copy because the ALLONGES, if existed, was not attached to the promissory note.

The law disfavored use of an allonge to indorse an instrument. The majority view under all of the "law merchant, the Uniform Negotiable Instruments Law (NIL), and the common law applied the No-Space Test. An overwhelming majority of courts throughout the county have expressly considered this issue and have repeatedly interpreted the 1951 version of UCC §3-202 to carry forward the No-Space Test, as demonstrated in the California Appeals Court decision in Pribus v. Bush (1981) 118 Cal.App.3d 1003 (1981).

The Pribus Court held that there was no valid allonge existed where the purported indorsements were not attached next to the notes themselves but were stapled to the back of another document in a group of documents which included the notes. The Court further discussed the **No-Space** test and its view of Allonges when there is space, which includes back face of the promissory note for indorsement. *Id.* at page 21.

California UCC §3-202(2) dictates how an Allonge is attached to a promissory note, which states that "An indorsement must be written by or on behalf of the holder and on the instrument or on a paper ***so firmly affixed thereto as to become a part there of***". *Emphasis* added. This requirement tightened the Uniform Negotiable Instruments Law's previous requirements in which the endorsement must "be written on the instrument itself or upon a paper attached thereto." The change was deliberate, apparently designed to assure the indorsement would travel with the instrument. This, it was thought, would "protect subsequent purchasers from the risk that the present holder or a previous holder has negotiated the instrument to someone outside the apparent chain of title through a separate document." Adams v. Madison Realty & Dev., Inc., 853 F.2d 163 at 165 (3rd Cir. 1988).

In this case, the original promissory note contained 5 pages, with the last 2 pages entitled signature statement of Debtors. There is ample room in the back of the note for indorsement; yet, Allonges are purportedly attached to the promissory note.

As discussed in Pribus, the alleged ALLONGES in this case was not firmly attached to the promissory note. Here, the Allonges were attached in the middle of the promissory note as produced. *See* Pacer Doc 45-1, page 18-25 of 29. It is apparent that the Allonges were fraudulently created after the fact, specifically for this motion. If that was the case, it would be a blatant attempt to commit fraud upon this Court.

   **c. MERS A THIRD PARTY TO THE ORIGINAL TRANSACTION HELD NO ENFORCEABLE BEEFICIAL INTEREST AND COULD NOT PASS ANY SUCH INTEREST TO DEUTSCH BANK**

Deutsch Bank's interest – if any - flow from MERS' interest as purported nominee for Indymac Bank, F.S.B. It is obviously that Indymac no longer existed as of December 7, 2009. Assuming *arguendo* that MERS was authorized to act as nominee for Indymac; such agency relationship did not allow it to act on the behalf of the FDIC.

Debtors had no relationship with MERS and did not authorize MERS to act as nominee for Indymac. The assignment of DOT by PHH to MERS as nominee is VOID on its face. Notwithstanding such obviously fraudulent conveyance, MERS acted on behalf

of Indymac, who no longer existed, to assign a beneficial interest it did not have to DBNTC.

The deceptions by MERS and DBNTC did not end there. In a deceptive and illegal maneuverer, DBNTC as trustee of a closed Residential Asset Securitization Trust 2006-A1, took beneficial interest in the DOT, together with the Note, in its own name for the benefit of the above mentioned trust. DBNTC undisputedly breached its fiduciary to the Trust as established in its own mentioned document, POOLING AND SERVICING AGREEMENT DATED FEBRUARY 1, 2006. DBNTC's action can be deemed embezzlement of trust assets because proceeds gained from Debtors' property can only go to DBNTC, not Residential Asset Securitization Trust 2006-A1. Furthermore, even if such gain can be distributed to certificate holders of the Residential Asset Securitization Trust 2006-A1, the trust status would be destroyed under REMIC provision. The term and condition of Pooling and Servicing Agreement dated February 1, 2006 is attached herewith as **Exhibit C**.

In Carpenter v. Logan, 83 U.S. 271, 274, the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

An obligation can exist with or without security. With no security, the obligation is unsecured but still valid. A security interest, however, cannot exist without an underlying existing obligation. (Hensley v. Hotaling (1871) 41 C. 22; Turner v. Gosden (1932) 121 Cal.App. 20; Lee v. Joseph (1968) 267 Cal.App.2d 30). It is impossible to define security apart from its relationship to the promise or obligation it secures. (Civil Code §§ 2872, 2909, 2920; California Mortgages and Deed of Trust, and Foreclosure Litigation, by Roger Bernhardt, 4th Edition, § 1.11). The obligation and the security are commonly drafted as separate documents – typically a promissory note and a deed of trust. If the creditor transfers the note but not the deed of trust, the transferee receives a secured note; the security follows the note, legally if not physically. (Civil Code § 2936; Seidell v. Tuxedo Land Co. (1932) 216 C. 165. Lewis v. Booth (1935) 3 C.2d 345) (endorsement of note transferred deed of trust). If the transferee is given the deed of trust without the note accompanying it, the transferee has no meaningful rights except the possibility of legal action to compel the transferor to transfer the note as well, if such was the agreement. (Kelley v. Upshaw (1952) 39 C.2d 179; Polhemus v. Trainer (1866) 30 C. 685).

Consequently, when one transferee receives the note and another receives the deed of trust, the one holding the note prevails, regardless of who first received a transfer. Adler v. Sargent (1895) 109 C.42. (California Mortgages and Deed of Trust, and Foreclosure Litigation, by Roger Bernhardt, 4th Edition, section 1.25).

"Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee', having received no interest in the underlying debt or obligation, has a worthless piece of paper." (4 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000).

In this case, MERS, a third party unrelated to the original DOT received beneficial interest in the Deed of Trust and Indymac received interest in the promissory note. It is undisputed that the conveyance of beneficial interest in the deed of trust to MERS was a nullity. Therefore, subsequent assignments made by MERS had no force or affect.

## **CONCLUSION**

For the foregoing reasons, Debtors respectfully requests this Court to deny Movant's motion with PREJUDICE and set an Order to Show Cause as to why sanction should not be imposed against Deutsche Bank National Trust Company and its Counsel, Barrett Daffin Frappier Treder & Weiss, LLP, in bringing this frivolous and ridiculous motion to harass Debtors and to cause Debtors incurring more litigation cost and delay.

Respectfully Submitted;

_____
Gary Harre, Esq.
Diane Beall, Esq.
Attorneys for Debtors

FDIC: Press Releases - PR-56-2008 7/11/2008    http://www.fdic.gov/news/news/press/2008/pr08056.html

**Each depositor insured to at least $250,000 per insured bank**

Advanced Search
Search FDIC...

Home | Deposit Insurance | Consumer Protection | Industry Analysis | Regulations & Examinations | Asset Sales | News & Events |

Press Releases   Online Press Room   Conferences & Events   Financial Institution Letters   Special Alerts   Letters to the Editor/Opinion Editorials   Speeches & Testimony

Home > News & Events > Press Releases

**Press Releases**

**FDIC Establishes IndyMac Federal Bank, FSB as Successor to IndyMac Bank, F.S.B., Pasadena, California**

**FOR IMMEDIATE RELEASE**
**July 11, 2008**

**Media Contact:**
**In Washington: Andrew Gray (202) 898-7192,**
**Cell: 202-494-1049**
angray@fdic.gov
**In California: David Barr**
**Cell: 703-622-4790**
dbarr@fdic.gov

En Español

IndyMac Bank, F.S.B., Pasadena, CA, was closed today by the Office of Thrift Supervision. The Federal Deposit Insurance Corporation (FDIC) was named conservator. The FDIC will transfer insured deposits and substantially all the assets of IndyMac Bank, F.S.B., Pasadena, CA, to IndyMac Federal Bank, FSB. Brokered deposits will be held by the FDIC and those insured deposits will be paid off when the insurance determination is complete. IndyMac Bank, FSB had total assets of $32.01 billion and total deposits of $19.06 billion as of March 31, 2008. As conservator, the FDIC will operate IndyMac Federal Bank, FSB to maximize the value of the institution for a future sale and to maintain banking services in the communities formerly served by IndyMac Bank, F.S.B.

Insured depositors and borrowers will automatically become customers of IndyMac Federal, FSB and will continue to have uninterrupted customer service and access to their funds by ATM, debit cards and writing checks in the same manner as before. Depositors of IndyMac Federal Bank, FSB will have no access to on-line and phone banking services this weekend. These services will be operational again on Monday. Loan customers should continue making loan payments as usual.

Beginning on Monday, July 14, IndyMac Federal Bank, FSB's 33 branches will observe normal operating hours and will continue to offer full banking services, including on-line banking. For additional information, the FDIC has established a toll-free number for customers of IndyMac Federal Bank, FSB. The toll-free number is 1-866-806-5919 and will operate today from 3:00 p.m. to 9:00 p.m. (PDT), and then daily from 8:00 a.m. to 8:00 p.m. thereafter, except Sunday, July 13, when the hours will be 8:00 a.m. to 6:00 p.m. Customers also may visit the FDIC's Web site at http://www.fdic.gov/bank/individual/failed/IndyMac.html for further information.

At the time of closing, IndyMac Bank, F.S.B. had about $1 billion of potentially uninsured deposits held by approximately 10,000 depositors. The FDIC will begin contacting customers with uninsured deposits to arrange an appointment with an FDIC claims agent on Monday. Customers can contact the FDIC for an appointment using the toll-free number above. The FDIC will pay uninsured depositors an advance dividend equal to 50 percent of the uninsured amount.

Based on preliminary analysis, the estimated cost of the resolution to the Deposit Insurance Fund is between $4 and $8 billion. IndyMac Bank, F.S.B. is the fifth FDIC-insured failure of the year. The last FDIC-insured failure in California was the Southern Pacific Bank, Torrance, on February 7, 2003.

# # #

Congress created the Federal Deposit Insurance Corporation in 1933 to restore public confidence in the nation's banking system. The FDIC insures deposits at the nation's 8,494 banks and savings associations and it promotes the safety and soundness of these institutions by identifying, monitoring and addressing risks to which they are exposed.

FDIC press releases and other information are available on the Internet via the World Wide Web at www.fdic.gov and may also be obtained through the FDIC's Public Information Center 1-877-275-3342 or (703) 562-2200. **PR-56-2008**

Home | Contact Us | Search | Help | SiteMap | Forms | En Español
Website Policies | Privacy Policy | USA.gov | FDIC Office of Inspector General
Freedom of Information Act (FOIA) Service Center

2/27/2011 4:08 PM

**1 / 1**                                                                                                                **Exhibit B**

# United States Bankruptcy Court
## Central District of California
Santa Ana
Judge Robert Kwan, Presiding
Courtroom 5D Calendar

**Tuesday, October 19, 2010**                                                          **Hearing Room  5D**

10:30 am

**8:10-21730**    Thuan X Nguyen and Tammy H Nguyen                                    **Chapter 7**
#33.00        Motion for relief from the automatic stay

Deutsche Bank National Trust Company, As Trustee of the Residential Asset Securitization Trust 2006-A1, Mortgage Pass-Through Certificates, Series 2006-A Under the Pooling and Servicing Agreement Dated February 1, 2006, its assigns and/or successors in interest vs. DEBTORS (Motion filed 9/21/10)

Docket #:   14

**Tentative Ruling:**

No tentative. Movant to address debtors' standing argument. See Fawn Ridge Partners, LP v. BAC Home Loans Servicing, LP (In re Fawn Ridge Partners, LP), BAP No. CC-09-1396 HPDu (9th Cir. BAP, unpublished memorandum decision, filed March 29, 2010)(available on BAP website).

### Party Information

Debtor(s):
 Thuan X Nguyen                                         Represented By
                                                        Marc R Tow

Joint Debtor(s):
 Tammy H Nguyen                                         Represented By
                                                        Marc R Tow

Movant(s):
 Deutsche Bank National Trust                           Represented By
                                                        Gerald S Kim

Trustee(s):
 Thomas H Casey (TR)